# IN THE UNITED STATES DISTRICT COURT
# FOR THE DISTRICT OF SOUTH CAROLINA
# CHARLESTON DIVISION

| | |
|---|---|
| United States of America, ) | |
| ) | |
| v. ) | Criminal No.: 2:08-1237-PMD-1 |
| ) | |
| Rashad Saleem Muhammad, ) | |
| ) | **ORDER** |
| Defendant. ) | |
| _____) | |

      This matter is before the court upon Defendant Rashad Saleem Muhammad's ("Defendant" or "Muhammad") Motion to Dismiss for Lack of a Speedy Trial. The second superseding indictment in this case was filed on October 15, 2010 and charges that on or about August 20, 2008 in the District of South Carolina, the Defendants Rashad Saleem Muhhamad, Damon Leon Milford, and Gary Terril Milford, knowingly, intentionally and unlawfully did possess with intent to distribute 100 Kilograms or more of marijuana, a schedule I controlled substance, and did aid and abet each other in the commission of the aforementioned offense; In violation of Title 21, United States Code, Sections 841(a)(1) and 841(b)(1)(B), and Title 18 United States Code Section 2.

      Count two of the indictment charges that on or about August 20, 2008 in the District of South Carolina, the Defendant Rashad Saleem Muhhmad, having been convicted of a crime punishable by imprisonment for a term exceeding one year, knowingly did possess in and affecting commerce, firearms and ammunition, that is, a Smith & Weston .38 caliber revolver, a Ruger 9mm pistol, an Intratec 9mm pistol, a Norcino 762 x 39 rife, a Glock 9mm pistol, and 9 mm ammunition, all of which had been shipped and transported in interstate and foreign commerce; In violation of Title 18, United States Code Sections 922(g)(1), 924(a)(2), and 924(e).

Count three of the second superseding indictment charges that on or about August 20, 2008, in the District of South Carolina, the Defendant, Rashad Saleem Muhammad, knowingly did use and carry firearms during and in relation to, and did possess a firearm in furtherance of, a drug trafficking crime which is prosecutable in a court of the United States; In violation of Title 18, United States Code, Section 924(c)(1)(A)(i).

Count four of the indictment charges that beginning at a time unknown to the grand jury, but beginning at least in or around January 1999, and continuing thereafter, up to and including the date of the second superseding indictment, in the District of South Carolina and elsewhere, the Defendants, Rasheed Saleem Muhammad, Damon Leon Milford, and Gary Terrill Milford, knowingly and intentionally did combine, conspire and agree and have tacit understanding that with each other and others, both known and unknown to the grand jury, to knowingly, intentionally, and unlawfully possess with intent to distribute marijuana, a Schedule I controlled substance, said conspiracy involving 1000 kilograms or more of marijuana, in violation of Title 21, United States Code, Sections 841(a)(1) and 841(b)(1)(A); All in violation of Title 21, United States Code, Section 846.

Finally, count five of the indictment charges that beginning at a time unknown to the grand jury, but beginning at least in or around January 2005, and continuing thereafter, up to and including the date of the second superseding indictment, in the District of South Carolina and elsewhere, the Defendant, Rasheed Saleem Muhammad, knowingly and intentionally did combine, conspire, agree and have tacit understanding with others persons, both known and unknown to the Grand Jury, to conduct and attempt to conduct financial transactions which in fact involved the proceeds of specified unlawful activity, and further knowing that (1) the transactions were designed to promote the carrying on of the specified unlawful activity, (2) the

transactions were designed, in whole or in part, to conceal and disguise the nature, the location, the source, the ownership and the control of the proceeds of the specified unlawful activity; and (3) the transactions involved criminally derived property of a value greater than $10,000; in violation of Title 18, United States Code, sections 1956(a)(1)(A)(i), 1956(a)(1)(B)(i), 1957 and 2; all in violation of Title 18, United States Code, section 1956(h).

## BACKGROUND

On August 27, 2008, Muhammad voluntarily turned himself into North Charleston Police pursuant to a warrant issued for possession with the intent to distribute marijuana and firearm charges. On December 30, 2008, an arraignment and detention hearing was conducted regarding the indictment. After the arraignment and detention hearing, Defendant was ordered detained.

This case has been pending since that time. The court has ordered nine continuances. The first continuance ordered by the court on March 24, 2009, excluded 74 days from the time periods of March 24, 2009 to June 5, 2009 from the speedy trial counter. On April 15, 2009, the government obtained a superseding indictment against Defendant. After the superseding indictment, on May 5, 2009, the court granted Defendant's Motion for a Continuance, excluding time from May 5, 2009 until August 12, 2009. The court ordered a third continuance on July 24, 2009, excluded 65 days from the time periods of July 24, 2009 to October 15, 2009 from the speedy trial time-limits counting from August 12, 2009, the ending date of the defense counsel's continuance granted on May 5, 2009.

On October 16, 2009, attorney Eduardo K. Curry, Defendant's first lawyer, was relieved as Defendant's attorney. From October 23, 2009 to July 2, 2010 Defendant was appointed 4 attorneys, namely Cameron J. Blazer, Esq.; Dale T. Cobb, Esq.; John F. Martin, Esq.; and Diedreich Von Lehe, III, Esq. Each of those attorneys was relieved of representation of

Defendant by the court. In the time period of the four court-appointed–attorneys between October 23, 2009 to July 2, 2010, a total of 260 days elapsed without a trial or date fixed for trial. Each time the court appointed a new attorney, a continuance was ordered, citing the "ends of justice." Specifically, the court continued the case a fourth time on October 16, 2009, excluding 91 days from the time periods of October 16, 2009 to January 14, 2010 from the speedy trial time clock. In that time period Cameron J. Blazer, Esq. was appointed by the trial court as Defendant's counsel. The fifth continuance ordered by the court on December 9, 2009, excluded 84 days from the time periods of December 9, 2009 to April 7, 2010 from the speedy trial time-limits counting from January 14, 2010, ending date of the courts third continuance. In that time period John F. Martin, Esq. was appointed by the trial court as Defendant's counsel. The sixth continuance ordered by the court on March 10, 2010, excluded 62 days, from the time period of March 10, 2010 to June 4, 2010 from the speedy trial time-limits counting from April 7, 2010, ending date of the court's fourth continuance. In that time period Diedreich Von Lehe, III, Esq. was appointed by the trial court as Defendant's counsel. The seventh continuance ordered by the court on May 11, 2010, excluded 83 days from the time periods of May 11, 2010 to August 25, 2010 from the speedy trial time-limits counting from June 4, 2010, ending date of the fifth continuance. During that time period, Russell Mace, Esq. was appointed as counsel.

Mr. Mace has remained Defendant's counsel since his appointment. The eighth continuance ordered by the court on August 13, 2010, excluded 64 days from the time periods of August 13, 2010 to October 27, 2010 from the speedy trial time-limits counting from August 25, 2010, the ending date of the sixth continuance. A second superseding indictment was filed against Defendant on October 13, 2010. Most recently, the court continued the case on January

4

13, 2011 in response to a Motion to Continue jointly filed by Defendant Muhammad's two co-defendants.

## ANALYSIS

Defendant argues that the indictment against him should be dismissed for lack of a speedy trial. Defendant asserts that the delay violated his rights under the Speedy Trial Act, 18 U.S.C. §§ 3161 et seq. and the Sixth Amendment.

### I.     The Speedy Trial Act:

Before addressing the constitutional issue, Defendant argues that the charges against him should be dismissed because the delay in this case violated the Speedy Trial Act. The Speedy Trial Act provides that the trial of a defendant charged in an indictment "shall commence within seventy days from the filing date . . . of the indictment, or from the date the defendant has appeared before a judicial officer or the court in which such charge is pending, whichever date last occurs." 18 U.S.C. § 3161(c)(1). "If a defendant is not brought to trial during this period, and the delays are not excludable, the 'indictment shall be dismissed on motion of the defendant,' although the district court has the discretion to dismiss with or without prejudice." *United States v. Andrews*, 365 Fed.Appx. 480, 483 (4th Cir. 2010) (quoting § 3162(a)(2); and citing *United States v. Henry*, 538 F.3d 300, 304 (4th Cir.2008)).

Recognizing that criminal cases vary widely and valid reasons exist for a longer delay in certain cases, Congress excluded from the speedy trial clock an extensive list of periods of delay. *See* 18 U.S.C. § 3161(h). At issue in this case is section 3161(h)(7)(A). That section provides that any period of delay resulting from continuances that are granted in the "ends of justice" is excluded. 18 USC § 3161(h)(7)(A). However, "[n]o such period of delay resulting from a continuance granted by the court in accordance with this paragraph shall be excludable under this

5

subsection unless the court sets forth, in the record of the case, either orally or in writing, its reasons for finding that the "ends of justice" served by the granting of such continuance outweigh the best interests of the public and the defendant in a speedy trial." *Id.* "Factors to be considered in deciding whether to grant such a continuance include the defendant's need for 'reasonable time to obtain counsel,' for 'continuity of counsel,' and for 'reasonable time necessary for effective preparation' of counsel." *United States v. Izegwire*, 371 Fed.Appx. 369, 373 (4th Cir. 2010) (quoting 18 U.S.C.A. § 3161(h)(7)(B)(iv)).

Muhammad argues that the continuances granted by the court citing the "ends of justice" are ineffective due to a lack of on the record findings as to why the "ends of justice" would be met, because *Zedner v. United States* requires on the record findings to support a court's order of continuance in the "ends of justice". 547 U.S. 489, 507 (2006) (stating that "without on-the-record findings, there can be no exclusion under § 3161(h)(7)"). However, all of the continuances in this case were either granted at the request of counsel or in open court. At those times, the reasons were either stated by counsel or the court. Out of an abundance of caution, the reasons for each of the nine continuances are discussed fully here.[1]

(1) On March 24, 2009 the court ordered a continuance at a Bar Meeting in open court. Defendant filed numerous motions on January 22, 2009, including a Motion to Suppress Evidence, Motions to Compel, Motion to Suppress Identification, Motion for Change of venue, Motion for Release of Brady Materials, Motion for Discovery, Motion for Extension of time to

---

[1]
>   Although the Act is clear that the findings must be made, if only in the judge's mind, before granting the continuance (the continuance can only be "granted ... on the basis of [the court's] findings"), the Act is ambiguous on precisely when those findings must be "se[t] forth, in the record of the case." However this ambiguity is resolved, at the very least the Act implies that those findings must be put on the record by the time a district court rules on a defendant's motion to dismiss under § 3162(a)(2).

*Id.* at 506-07.

file other motions, Motion to Dismiss; the Government responded to these motions on February 12, 2009 and filed a Demand for Disclosure of Witnesses in Support of Alibi Defense, Motion for Discovery, Motion for Disclosure of Expert Witnesses. The court set a March 25, 2009 for a hearing on those motions. The court continued the case on March 24, 2009 because given the complexity of issues in this case, the numerous motions filed, and incomplete discovery, the parties were not ready to proceed to trial.

(2) On May 5, 2009 the court ordered a continuance in response to Defendant's Motion to Continue.

(3) On July 24, 2009 the court ordered a continuance at a Bar Meeting in open court, because the parties were not yet ready for trial.

(4) On October 16, 2009 the court ordered a continuance, because Eduardo Curry was terminated as counsel and Cameron Blazer was added. This continuance was ordered because Defendant's new lawyer, Ms. Blazer, needed time to learn about the case and determine what additional discovery to request or motions to file before trial would be appropriate.

(5) The court ordered the next continuance on December 9, 2009 at a Bar Meeting in open court. On December 9, 2009, attorney Blazer had only been appointed for two months and had filed a host of motions, including a Motion for Leave to File Additional Motions. Additional time was needed due to the complex nature of the case.

(6) Between the continuance on December 9, 2009 and the continuance ordered on March 10, 2010, Defendant had multiple lawyers appointed and subsequently relieved. Ms. Blazer was relieved and Mr. Martin was appointed on January 21, 2010. Mr. Martin was relieved and Mr. Cobb was appointed on March 10, 2010. The court continued the case at that time because

whoever the court would appoint to take the case would need time to get familiar with the case and ready for trial.

(7) At the Bar Meeting on May 11, 2010, the court continued the case again, because the parties were not ready for trial. At that time, Defendant's new lawyer, Mr. Von Lehe, had been counsel of record for less than two months. This case involved voluminous amounts of discovery. The issues were numerous and complex. Mr. Von Lehe's task of getting familiar with the activity in the case, and any Defense strategies, was an even greater challenge than usual because Defendant had numerous previous lawyers. Given the complexity of the case and short time Mr. Von Lehe had been counsel of record, the court continued the case.

(8) Next, On August 13, 2010 the court ordered a continuance at a Bar Meeting in open court. This continuance came nine days after a status conference on various issues. At that status conference the following discussion between the court and Counsel ensued:

> THE COURT: . . . We're going to get this case ready for trial and we're going to try the case. But, I'm not going to do it until both sides are prepared and the information has been exchanged. Until then, Mr. Muhammad can just stay where he is. And whether he wants a speedy trial or not, until we get this case in proper form, I'm not going to rush forward and then push back. So what I'm telling you is this. Both the Government and the defendant confer, and anything you do not have, submit a motion to me to obtain it, so I'll know what I'm dealing with, outline what you have and what you don't have. And then we'll have a hearing on all that. And you'll also have a hearing on the handwriting exemplar, the contempt of court issue. Now, when that's said and done, I'll decide whether we're going to try it this term or not.
>
> MR. MACE: Okay.
>
> THE COURT: Fair enough?
>
> MR. MODICA: Thank you, Your Honor.

*See* Doc. # 228, Tr. of Status of Conference on August 4, 2010, at 13-14. After that status conference, and reviewing the numerous issues lingering, the court continued the case.

8

(9) Finally, the case was continued on January 13, 2011 in response to a Motion to Continue. This motion was jointly filed by Defendant Muhammad's two co-defendants, because the lawyers for those defendants needed more time to review the discovery, conduct a meaningful investigation, attempt to locate witnesses, some of whom were out of state, and interview them in an effort to determine the provable facts, prepare a proper defense and effectively represent their clients.

All nine of these continuances were either ordered in response to a motion from Defendant, or the court made appropriate findings as to why the "ends of justice" were met by ordering such a continuance. As such, all of the time excluded by the continuances was properly excluded. Therefore, Defendant's Motion to Dismiss pursuant to the Speedy Trial act is denied.

In addition to those time periods that were excluded pursuant to the "ends of justice" exclusion, the following are excluded under the statute: "delay resulting from any proceeding, including any examinations, to determine the mental competency or physical capacity of the defendant," 18 U.S.C.A. § 3161(h)(1)(A), and "delay resulting from any pretrial motion, from the filing of the motion through the conclusion of the hearing on, or other prompt disposition of, such motion," 18 U.S.C.A. §§ 3161(h)(1)(D). "The time from the filing of a motion until the conclusion of the hearing on the motion is excluded, even if the delay in holding the hearing was not reasonably necessary." *Izegwire*, 371 Fed.Appx. at 373 (citing *Henderson v. United States*, 476 U.S. 321, 330 (1986)).

In addition to the numerous motions that were periodically pending, pausing the speedy trial clock, one additional matter has kept the speedy trial clock stopped since February 11, 2009. On that date the Government filed a Demand for Disclosure of Witness in Support of Alibi Defense, demanding that, pursuant to Fed. R. Crim. P. 12.1(a), Defendant provide the

9

government notice of any intention to offer an alibi defense. Specifically, the government demanded Defendant provide the specific location or locations where Defendant would claim to have been at the time of the alleged offense, and the names and addresses of the individuals Defendant intended to rely upon to establish such alibi. The government has raised the issue of Defendant's noncompliance with this demand during the course of the pretrial proceedings. For example this issue was brought to the court's attention at a hearing prior to the court's order on various motions dated March 27, 2009. In that order, the court stated the following:

> . . . [T]he Government brought to the court's attention two concerns it had with Mr. Muhammad's Notice of Alibi. The Government found the notice deficient in that it (1) did not specify the place where Defendant was at between August 21–24, 2008, and (2) did not specify the timing of the Alibi witnesses' interaction with Mr. Muhammad. Mr. Muhammad's counsel indicated that he would provide the Government with this information; therefore, the court finds this issue resolved.

Order, March 27, 2009. However, due to the transition in counsel, the government was never provided this information. Again, at a status conference on August 4, 2010, the government raised the issue:

> MR. MODICA: Yes, Your Honor. If I may, since we're here already, there was another issue, and I brought it up to counsel prior to our meeting, but I would like to put it on the record. I can't tell you the exact date, but it was a good while ago, while defendant was still being represented by Mr. Eduardo Curry, Mr. Curry had filed a notice of alibi and had provided some names, but had incomplete information. Now, I don't know if the defendant still intends to go forward with an alibi notice, but each subsequent attorney that has been appointed, I reminded each and every one of them that I needed the information, as directed by you, which was more detail as to how these people may be contacted. I have yet to get that information. And so I would like to put that on the record, because it may affect the Government's ability to investigate the potential for alibi.
>
> THE COURT: Okay. Mr. Mace?
>
> MR. MACE: Judge, I'd ask you give me two weeks to do that. I don't have those names. I'm just now made aware of that this morning.

*See* Doc. *# 228,* Tr. of Status of Conference on August 4, 2010, at 12. Most recently, at a hearing on April, 14 2011, the government again raised this issue. At that time it became clear that Defendant had not provided the government with all of the information necessary to comply with the rule. Specifically, in addition to a disagreement regarding whether Defendant was required to provide contact information for all of the individuals originally included as possible alibi witnesses, Defendant had not yet provided the government with the location or locations that the alibi witnesses would testify Defendant was during the alleged criminal activity. Therefore, the speedy trial clock has been stopped since February 11, 2009.

Additionally, even if the speedy trial clock was not stopped, it restarted twice during this case, because when a defendant is indicted on a superseding indictment, a new seventy-day period begins. *United States v. Lesczynski*, 86 F. App'x 551, at *3 (4th Cir.2004) (rejecting a Speedy Trial Act claim on the ground that the time for trying a defendant starts over if a superseding indictment adds a new charge and is filed in good faith). On April 15, 2009 the grand jury returned a superseding indictment that added two gun charges. Then on October 13, 2010, the grand jury returned a second superseding indictment. That indictment added the conspiracy charge and a money laundering charge. The government only recently obtained information leading to the second superseding indictment and obtained the indictment quickly. In fact, no evidence suggests that the government filed either of these indictments for the purpose of restarting the speedy trial clock. As such, each of these superseding indictments restarted the speedy trial clock.

Therefore, Defendant's Motion to Dismiss pursuant to the speedy trial act fails because the continuances were appropriately granted and speedy trial clock was stopped on February 11, 2009 and remains so until the notice of alibi information is provided by Defendant.

Additionally, the speedy trial clock restarted during that time when the superseding indictments were filed. Thus, seventy days has not yet elapsed and Defendant's Motion to Dismiss is denied.

## II.     The Sixth Amendment Right to a Speedy Trial:

In addition to his argument based on the Speedy Trial Act, Defendant makes a constitutional challenge. The Sixth Amendment of the United States Constitution requires: "In all criminal prosecutions, the accused shall enjoy the right to a speedy and public trial . . . ." U.S. Const. Amend. VI. The United States Supreme Court has rejected a bright line test to determine whether a defendant's Constitutional right to a speedy trial had been violated, and instead has outlined four factors to be weighed in a balancing test. *See Barker v. Wingo*, 407 U.S. 514, 530 (1972). In order to prevail on such a claim, a defendant must establish "that on balance [the] four separate [*Barker*] factors weigh in his favor: 'whether the delay before trial was uncommonly long, whether the government or the defendant is more to blame for that delay, whether, in due course, the defendant asserted his right to a speedy trial, and whether he suffered prejudice as the delay's result." *United States v. Thomas*, 55 F.3d 144, 148-149 (4th Cir. 1995) (quoting *Doggett v. United States*, 505 U.S. 647, 651 (1992) (paraphrasing the four-factor test announced in Barker, 407 U.S. at 530)). Furthermore, no single factor is necessary or sufficient to establish a deprivation of the speedy trial right; instead, a court must consider all the factors and any other relevant circumstances. *Barker*, 407 U.S. at 533.

To initiate the *Barker* analysis, the court must first consider whether the length of the delay between the defendant's initial appearance and the trial "has crossed the threshold dividing ordinary from 'presumptively prejudicial' delay." *Doggett*, 505 U.S. at 651. This initial determination must be made in order to initiate the remainder of the *Barker* analysis. *Id.* In this case, the government concedes an inquiry into all the *Barker* factors is appropriate, as ordinarily,

a delay approaching one year is presumptively prejudicial. *Id.* at 652 n.1. However, a delay that exceeds one year or is "presumptively prejudicial" does not, in itself, necessarily establish a violation of the defendant's rights to a speedy trial. *Barker* at 533-36 (holding that more than a five year delay, while extraordinary, did not violate the defendant's right to a speedy trial).

In analyzing the remaining factors, the court must next consider the reason for the delay. *Barker* at 531. "Delay 'to hamper the defense' weighs heavily against the prosecution, while delay caused by the defense weighs against the defendant." *Vermont v. Brillon*, 129 S.Ct. 1283, 1290 (2009) (citing *Barker* at 530). "Because 'the attorney is the [defendant's] agent when acting, or failing to act, in furtherance of the litigation,' delay caused by the defendant's counsel is charged against the defendant." *Id.* at 1290-91(Citing *Coleman v. Thompson*, 501 U.S. 722 (1991)). The court should analyze the reasons for the delay and categorize them "as valid, improper, or neutral." *United States v. Hall*, 551 F.3d 257, 272 (4th Cir. 2009) (citing *United States v. Grimmond*, 137 F.3d 823, 828 (4th Cir.1998)).

In this case, Defendant argues that the trial court's orders of continuance from March 24, 2009 until October 27, 2010, excluding the order of continuance from May 5, 2009 to August 12, 2009, amounts to 492 days, effectively depriving the defendant of his right to a speedy trial. However, Defendant caused delays in his trial by requests for continuances, filing of motions, and requests or need for a new attorney. Specifically, while represented by Eduardo Curry from December 30, 2008 until October 16, 2009, Defendant made numerous motions, including a Motion to Suppression Evidence, and requested continuances. In fact, Defendant never requested a speedy trial during Curry's representation and repeatedly demonstrated he was not ready for trial.

13

Defendant claims that an undue delay of 264 days occurred when the court appointed four attorneys, after Curry, to represent Defendant, because the court continued the matter each time a new attorney was appointed. However, the actions of a defendant's attorney have been found to be an extension of the defendant himself. *Brillon,* at 1291 (holding that delay cause by a state appointed defense counsel's inaction was not attributable to the state; that delay was attributable to the defendant himself because the lawyer was representing him). Therefore, the delay caused by the removal of Defendant's attorney, whether it was at the request of Defendant, or the discretion of the attorney, should not be considered part of the 70 day time period allotted by the Speedy Trial Act. This delay was not improper; in fact, it was a valid delay.

The current attorney, as well as Defendant acting *pro se*, have filed numerous motions in this matter. Furthermore, Defendant has failed to respond to the court order that he supply the Government with additional information relative to his Notice of Alibi. The extensive list of motions and lack of response to the court order indicates Defendant was unprepared for trial, and has in fact caused a delay in the trial. Again, these delays were valid delays.

Third, the court must consider whether and how Defendant asserted his right to a speedy trial. "Failing to assert the right will make it difficult for a defendant to prove he was denied a speedy trial." *Barker* at 532. The Fourth Circuit has held that asserting this right too late can be held against the defendant. *United States v. Grimmond*, 137 F.3d 823, 829 (1998) (holding there was no violation of a defendant's speedy trial right after a thirty-five month delay, noting the fact that the defendant waited until four months before trial to assert this right). In this case, Defendant initially asserted that his right to a speedy trial has been violated in the motion dated February 17, 2011. Up to that point, Defendant failed to assert this right or establish a basis for

14

dismissal on speedy trial grounds. Therefore, this factor should not be weighed against the government.

Finally, and most importantly, the court must determine whether Defendant has been prejudiced by the delay. The court in *Barker* specifically directs the court to consider: (1) oppressive pretrial incarceration; (2) anxiety and concern of the accused; and (3) impairment of the accused's defense. *Barker* at 532. Although the government concedes Defendant is suffering consequences of incarceration including loss of employment, inability to care for his family, and public ridicule of being under indictment, Defendant is not unlike similarly situated defendants. Furthermore, the third prong of this analysis, the possible impairment of the accused's defense, is not satisfied as Defendant has not asserted any evidence of the defense being impaired. Therefore, Defendant has not demonstrated actual prejudice exists to hamper his defense.

Defendant's Motion to Dismiss for lack of a speedy trial in violation of his Sixth Amendment right is denied, because application of the *Barker* factors indicate the delay between the indictment and the trial is not unduly lengthy in this case, as the defendant has contributed to the delay and the government's contribution to the delay was neither an attempt to gain a tactical advantage nor made in bad faith. Additionally, Defendant did not assert his right to a speedy trial until recently, and Defendant has not demonstrated actual prejudice exists to hamper his defense.

## **CONCLUSION**

For the reasons discussed above, Defendant's Motion to Dismiss is **DENIED.**

**AND IT IS SO ORDERED.**

_____
PATRICK MICHAEL DUFFY
United States District Judge

**April 26, 2011**
**Charleston, SC**