IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF SOUTH CAROLINA
CHARLESTON DIVISION

| | | |
|---|---|---|
| United States of America, | ) | |
| | ) | |
| v. | ) | Criminal No.: 2:08-1237-PMD |
| | ) | |
| Rashad Saleem Muhammad, | ) | |
| Damon Leon Milford, and | ) | **ORDER** |
| Gary Terril Milford | ) | |
| | ) | |
| Defendant. | ) | |
| _____ | ) | |

This matter is before the court upon Defendants Rashad Saleem Muhammad ("Muhammad" or "Defendant Muhammad"), Damon Leon Milford ("Damon Milford" or "Defendant Damon Milford"), and Gary Terril Milford's ("Gary Milford" or "Defendant Gary Milford") motions to dismiss. The second superseding indictment in this case was filed on October 15, 2010 and charges that on or about August 20, 2008 in the District of South Carolina, the Defendants Rashad Saleem Muhammad, Damon Leon Milford, and Gary Terril Milford, knowingly, intentionally and unlawfully did possess with intent to distribute 100 Kilograms or more of marijuana, a schedule I controlled substance, and did aid and abet each other in the commission of the aforementioned offense; In violation of Title 21, United States Code, Sections 841(a)(1) and 841(b)(1)(B), and Title 18 United States Code Section 2.

Count two of the indictment charges that on or about August 20, 2008 in the District of South Carolina, the Defendant Rashad Saleem Muhhmad, having been convicted of a crime punishable by imprisonment for a term exceeding one year, knowingly did possess in and affecting commerce, firearms and ammunition, that is, a Smith & Weston .38 caliber revolver, a Ruger 9mm pistol, an Intratec 9mm pistol, a Norcino 762 x 39 rife, a Glock 9mm pistol, and 9mm ammunition, all of which had been shipped and transported in interstate and foreign

1

commerce; In violation of Title 18, United States Code Sections 922(g)(1), 924(a)(2), and 924(e).

Count three of the second superseding indictment charges that on or about August 20, 2008, in the District of South Carolina, the Defendant, Rashad Saleem Muhammad, knowingly did use and carry firearms during and in relation to, and did possess a firearm in furtherance of, a drug trafficking crime which is prosecutable in a court of the United States; In violation of Title 18, United States Code, Section 924(c)(1)(A)(i).

Count four charges that beginning at a time unknown to the grand jury, but beginning at least in or around January 1999, and continuing thereafter, up to and including the date of this Second Superseding Indictment, in the District of South Carolina and elsewhere, the Defendants, Rasheed Saleem Muhammad, Damon Leon Milford, and Gary Terrill Milford, knowingly and intentionally did combine, conspire and agree and have tacit understanding with each other and others, both known and unknown to the grand jury, to knowingly, intentionally, and unlawfully possess with intent to distribute marijuana, a Schedule I controlled substance, said conspiracy involving 1000 kilograms or more of marijuana, in violation of Title 21, United States Code, Sections 841(a)(1) and 841(b)(1)(A); All in violation of Title 21, United States Code, Section 846.

Finally, count five of the indictment charges that beginning at a time unknown to the grand jury, but beginning at least in or around January 2005, and continuing thereafter, up to and including the date of the second superseding indictment, in the District of South Carolina and elsewhere, the Defendant, Rasheed Saleem Muhammad, knowingly and intentionally did combine, conspire, agree and have tacit understanding with others persons, both known and unknown to the Grand Jury, to conduct and attempt to conduct financial transactions which in

fact involved the proceeds of specified unlawful activity, and further knowing that (1) the transactions were designed to promote the carrying on of the specified unlawful activity, (2) the transactions were designed, in whole or in part, to conceal and disguise the nature, the location, the source, the ownership and the control of the proceeds of the specified unlawful activity; and (3) the transactions involved criminally derived property of a value greater than $10,000; in violation of Title 18, United States Code, sections 1956(a)(1)(A)(i), 1956(a)(1)(B)(i), 1957 and 2; all in violation of Title 18, United States Code, section 1956(h).

## **BACKGROUND**

A jury was selected and trial was set in this case for the first week in May, 2011. It began on May 2. Each side delivered opening statements, and then the government called several witnesses. One of those witnesses was Special Agent Christopher Neville ("Agent Neville"). During his testimony Agent Neville used his file to refresh his recollection as to particular dates. At the end of Agent Neville's testimony for that day, Attorney Russell Mace questioned whether he had been provided everything in that file pursuant to Federal Rule of Evidence 612. The government assured all three defense counsel that they had already been provided everything in Agent Neville's file. Additionally, Matthew Modica, Assistant United States Attorney, represented as an officer of the court that everything had been produced.

Later that evening, Mr. Modica reviewed the file and discovered several pages of handwritten notes that had not been produced. He immediately emailed copies of those notes to each Defendant's lawyer. The next morning, before the trial resumed, defense counsel informed the court of the additional discovery that was provided the previous evening. Specifically, the documents included a *Miranda* rights waiver form signed by Damon Milford on March 4, 2010 and handwritten notes taken by officers during an interview with Damon Milford on that date.

The interview was conducted by Agent Neville and the notes were taken by another agent. Those notes indicate that Damon Milford told officers on that date that Muhammad was not at the 2424 Air Park Road address on the night of the events leading to his arrest. That statement contradicts Damon Milford's statement on August 21, 2008, when he stated that Muhammad was present at the site on that date and time.

Defendant Muhammad argued that the court should "dismiss this Indictment and/or declare a mistrial and attach jeopardy to that mistrial based on what I believe is prosecutorial misconduct." [Trial Tr. 179: 7-10]. He argued that the government was not ready for trial so they were goading Defendants into asking for a mistrial, because in addition to violating *Brady*[1], this new evidence created a *Bruton*[2] problem. In addition to the issues surrounding the unknown statement, Defendant Muhammad argued that the reference the government made in the opening statement to the recent killing of Osama Bin Laden was intended to goad Defendants into asking for a mistrial. Although these problems were significant, Defendant Muhammad did not unequivocally ask for a mistrial. Defendant Muhammad asked for a mistrial only if the court would immediately grant a motion to dismiss based on double jeopardy: "we want to stay on track, and continue this trial, unless the court is willing to declare a mistrial and attach jeopardy to it." [Trial Tr. 180: 5-7]. "If the Court's unwilling to attach jeopardy, Judge, we are not asking for a mistrial." [Trial Tr. 181: 4-5].

Defendant Gary Milford asked that all statements made by either of the Milfords be suppressed as a sanction for "the degree of discovery abuses we have been experiencing throughout this piecemeal discovery over months, Your Honor, and weeks." [Trial Tr. 181: 11-14]. Alternatively, if the court was unwilling to suppress all of the statements of those two

---

[1] *Brady v. Maryland*, 373 U.S. 83 (1963).
[2] *Bruton v. United States*, 391 U.S. 123(1968).

4

Defendants, he argued that double jeopardy should preclude retrial after any mistrial. In other words, he joined in the request that any mistrial include a finding that jeopardy had already attached. Additionally at this time, Defendant Gary Milford requested that the cases be severed in the event of a mistrial.

Defendant Damon Milford made the same arguments as Defendant Gary Milford. He asked "that the case be dismissed with prejudice based on excessive discovery violations and this evidence that has suddenly come forward." [Trial Tr. 182: 21-24]. Alternatively, Defendant Damon Milford moved "to suppress any and all statements by the defendants, the ones that were provided last evening, as well as the other statements that the Government intended to offer regarding 8-21, 2008." [Trial Tr. 182: 25 & 183: 1-3]. He too asked for a mistrial only in the event that the court would immediately grant a motion to dismiss based on double jeopardy. Additionally, Defendant Damon Milford asked that if the cases were severed, he be allowed to continue with that jury.

The government admitted that the nondisclosure of the statement was a *Brady* violation, as the evidence was exculpatory as to Defendant Muhammad. The government also recognized that the existence of this statement exposed the *Bruton* problem: Defendant Muhammad has a right to call those witnesses who may provide exculpatory evidence, but the Milfords have a right not to testify during the course of their trial. Therefore, as no solution was apparent, the government consented to a mistrial.

In spite of Defendants' individual willingness to continue with the trial, the court declared a mistrial because of the incurable problems associated with attempting to continue with a joint trial. In declaring a mistrial, the court discussed the problems associated with continuing the trial and considered alternatives in detail:

5

> . . . There is no good solution. I have thought – I believe I have thought about every alternative in trying to resolve this dilemma.
>
> I am convinced that there is no way to salvage this jury. There is no way for me to go forward with this trial with this jury with any of the charges against any of the defendants, because I cannot do so and be sure that they will get a fair trial. There is no way that I can let Mr. Mace cross-examine from redacted statements; yet, I can't allow him to call the codefendants as witnesses.
>
> There is no way I can dismiss Mr. Muhammad's client – Mr. Muhammad – Mr. Mace's client without implying other things to the jury if I went forward with the charges against the other two defendants.

[Trial Tr. 193: 8-21]. Additionally, the court added "[i]t is my firm belief that there was no prosecutorial misconduct that was intentional to rise to the level to entitle the defendants to any dismissal of the charges. . . there was no intent of goading by the Government; it was just ineptitude by the Government." [Trial Tr. 194: 11-18].

## ANALYSIS

Defendant Muhammad and Defendant Damon Milford have filed a motion to dismiss the indictments against them. Defendant Gary Milford has joined in Defendant Muhammad's motion. Defendants argue that (1) the indictment should be dismissed because none of Defendants consented to the mistrial and the mistrial was not manifestly necessary. Defendant Damon Milford additionally argues that (2) the indictment should be dismissed because the government's conduct was intended to goad Defendants into asking for a mistrial and (3) the indictment should be dismissed based upon the inaccuracy of the testimony presented to the grand jury. Each of these arguments is addressed below.

**(1) Although Defendants did not consent to the mistrial, there was "manifest necessity" to declare the mistrial.**

The Constitution protects criminal defendants from successive prosecutions. U.S. Const. Amend V (stating that no person can "be subject for the same offense to be twice put in jeopardy of life or limb"). Once a trial has begun, a defendant is entitled to have that trial continue to verdict; defendants have "a valued right to have [the] trial completed by a particular tribunal." *Arizona v. Washington*, 434 U.S. 497, 503-505 (1978) ("as a general rule, the prosecutor is entitled to one, and only one, opportunity to require an accused to stand trial"). No constitutional protections prevent retrial of a defendant who consents to a mistrial. However, when a mistrial is declared over the objection of the defendant, that defendant can only be retried if the prosecution is able to show that there was "manifest necessity" to declare the mistrial. *Id.* at 505. (". . . [T]he prosecutor must shoulder the burden of justifying the mistrial if he is to avoid the double jeopardy bar. His burden is a heavy one. The prosecutor must demonstrate 'manifest necessity' for any mistrial declared over the objection of the defendant"). "The words 'manifest necessity' appropriately characterize the magnitude of the prosecutor's burden. For that reason Mr. Justice Story's classic formulation of the test has been quoted over and over again to provide guidance in the decision of a wide variety of cases." *Id.* at 505-506. Justice Story explained the standard as follows:

> We think, that in all cases of this nature, the law has invested Courts of justice with the authority to discharge a jury from giving any verdict, whenever, in their opinion, taking all the circumstances into consideration, there is a manifest necessity for the act, or the ends of public justice would otherwise be defeated. They are to exercise a sound discretion on the subject; and it is impossible to define all the circumstances, which would render it proper to interfere. To be sure, the power ought to be used with the greatest caution, under urgent circumstances, and for very plain and obvious causes. . . . But, after all, they have the right to order the discharge; and the security which the public have for the faithful, sound, and conscientious exercise of this discretion, rests, in this, as in other cases, upon the responsibility of the Judges, under their oaths of office.

*United States v. Perez*, 9 Wheat. 579, 580 (1824).

In this case, the mistrial was declared without Defendants' consent. Defendants now argue that the indictment should be dismissed because the court ordered the mistrial over Defendants' objection. Whether the government can force Defendants to be retried turns upon whether there was "manifest necessity" to declare a mistrial.

"Manifest necessity" has been found when the problem causing the court to declare a mistrial created a predicament for which there was no other solution. For example, in *Illinois v. Somerville*, 410 U.S. 458 (1973), the Court found that "manifest necessity" to declare a mistrial existed. In that case, the trial court "terminated the proceeding because a defect was found to exist in the indictment that was, as a matter of Illinois law, not curable by amendment." *Id.* at 468. The Supreme Court held that "the mistrial met the 'manifest necessity' requirement of our cases since the trial court could reasonably have concluded that the 'ends of public justice' would be defeated by having allowed the trial to continue." *Id.* at 459. *See also, id.* at 471 (stating that "where the declaration of a mistrial implements a reasonable state policy and aborts a proceeding that at best would have produced a verdict that could have been upset at will by one of the parties, the defendants interest in proceeding to verdict is outweighed by the competing and equally legitimate demand for public justice").

While "manifest necessity" has been found when the trial court was left with no other option but to declare a mistrial, not every difficult situation or unsavory predicament facing a trial court rises to the level of "manifest necessity." In *United States v. Council*, 973 F.2d 251 (4th Cir. 1992), the Fourth Circuit Court of Appeals reversed a trial court's order denying a defendant's motion to dismiss on double jeopardy grounds. In that case, the court submitted two counts to the jury, counts nine and eleven. *Id* at 254. Those counts charged that the defendant

knowingly received and possessed unregistered firearms. *Id.* at 253. In order to convict the defendant, the prosecutor had to prove to the jury that the defendant "knowingly possessed the firearms as charged in the indictment." *Id.* During deliberations, the jury had questions about the term "knowingly." *Id.* at 254. In response the court repeated the definition it had included in the jury instructions. *Id.* However, this did not answer the jury's questions and eventually the court received a note from the foreperson asking "[i]f the jury finds the defendant acted to protect the children and further feels the prosecution failed to prove the defendant didn't act in the best interest of the children, then did he act for an innocent reason?" *Id.* The court then declared a mistrial over Council's objection stating that "it had erred in precluding Council from showing that children were present at the property from which Council removed the grenades and the mines. The court also stated that it thought 'in fairness to both sides the case has not been developed and the court has precluded its development. . . .'" *Id.* at 254-55. On appeal, the court found that the government had not shown manifest necessity for the mistrial: "[u]ndoubtedly the jury was seriously considering the instruction about knowing possession. The court's and the prosecutor's disapproval of the question affords no ground for a mistrial." *Id.* at 255 ("We cannot accept the government's argument that the mistrial was proper merely because the trial court cited fairness to the defendant as a reason for ruling").

The Fourth Circuit also found the government had failed to show manifest necessity for a mistrial in *United States v. Shafer*, 987 F.2d 1054 (4th Cir. 1993). In that case, the government failed, until after the trial had begun, to produce a large quantity of discovery that contained *Brady* material. *Id.* at 1056. Specifically, in response to a subpoena during the middle of the trial, the police department produced "a cart that was four feet long and stacked two to three feet

9

high with [the defendant's company's] financial records - records that had never been disclosed to Shafer's lawyers." *Id.*

The trial court denied Shafer's motion to dismiss the case and considered granting a continuance for the defendant's lawyers to review the documents, but ultimately "determined that the proceedings were 'tainted' by the Government's failure to turn over the discovery materials and, over Shafer's objection, declared a mistrial *sua sponte*." *Id.* The government then reprosecuted and Shafer plead guilty, reserving the right to appeal the issue of whether the government could show manifest necessity for the court to declare a mistrial over the defendant's objection. *Id.* at 1056-57.

On appeal, the court found in favor of the defendant, based on two mistakes by the trial court:

> We conclude that this mistrial was not required by manifest necessity. First, there were available alternatives that would have alleviated the prejudice to Shafer and allowed the trial to continue. Second, the district court's decision to declare the mistrial was at least partially based upon its recognition that the government's case was weakened by the newly discovered materials.[3]

*Id.* at 1057. The court held that alternatives, less drastic than a mistrial, were available, and suggested several of those alternatives. *Id.* at 1058 ("The district court abused its discretion because there were several alternatives that would have protected both Shafer's right to cross-examine the government's witnesses and his right to submit the case to the jury"). For example, the Fourth Circuit suggested that the trial court could have ordered a continuance for the defendant's attorneys to study the material and prepare to incorporate it into the trial; "the court

---

[3] Defendant Muhammad argues, based on *Shafer*, that the indictment should be dismissed because the government's case will be strengthened by the mistrial. What *Shafer* prohibits is the district court "granting a mistrial to allow the prosecution to strengthen its case." *Id.* at 1057. In *Shafer*, the trial court specifically noted the prejudice to the government as a reason for declaring a mistrial. *Id.* In this case, the effect of the mistrial upon the strength of the government's case played no role in the court's determination that a mistrial was necessary. Therefore, *Shafer* is not applicable to the extent it discusses the strength of the prosecution's case.

could have inquired into Shafer's willingness to waive prejudice he may have suffered from these late disclosures and continue the trial;" the government's witnesses could have been recalled; the court could have allowed the defendant to offer new evidence; and the court could have precluded the defendant from discussing the fact that the government had failed to produce these documents. *Id.*

In this case, Defendants argue that the indictment should be dismissed because the government cannot show that "manifest necessity" required the court to declare the mistrial. Much like *Shafer*, this case involves the government's failure to produce important documents before trial and the resulting pediment the court is placed in when those documents, not produced until the trial has begun, are important. However, the documents in this case are different than those in *Shafer*. The agent's handwritten notes produced during the trial contain a statement by Damon Milford that contradicts his previous statement on August 21, 2008, when he stated that Muhammad was present at the site on that date and time. This statement by Damon Milford contradicts his previous statement, admits he was at the scene, and is exculpatory as to Muhammad.

The nature of the statement and the joint trial created a problem that could not be remedied by any action less drastic action than a mistrial. The problem could not be cured because it is of constitutional magnitude.[4] At the time the mistrial in this case was declared, the court considered "every alternative in trying to resolve this dilemma," but was unable to continue "with this trial with this jury with any of the charges against any of the defendants, because [the court could not] do so and be sure that they will get a fair trial."

---

[4] The government and Defendants agreed that the statement allegedly made by Defendant Damon Milford and summarized in the documents produced once the trial had begun created a constitutional problem based upon *Bruton.*

11

Severing the case and continuing with one or two of the Defendants was not an option. Because the trial has already begun, the court could not be sure that the jury would not draw inappropriate conclusions regarding the guilt of the remaining Defendant(s) when other Defendant(s) had been dismissed.

Any redaction or suppression of the statement to remedy the problem it caused as to one Defendant Damon Milford would increase the prejudice to Defendant Muhammad. Specifically, Defendant Damon Milford suggested the court suppress any statements made by his client in order to cure the prejudice caused by the nonproduction of the statement prior to trial. However, because in the statement Damon Milford said that Muhammad was not present on the night in question, Muhammad had a right to use that statement as part of his defense.

Defendant Muhammad suggests that the trial could have continued with all three Defendants and simply suppressed the statements. At the time of the mistrial, Defendants Damon Milford and Gary Milford did ask the court to suppress the statements, and all three Defendants requested to continue with that jury. However, at the time of the mistrial, Muhammad did not mention a willingness to consent to suppression of the statements; he was clear that there was a *Bruton* problem, but never suggested waiving his rights under *Bruton* as the solution. Absent a waiver of his rights under *Bruton*, the trial could not suppress the statements and proceed with all three Defendants.

Additionally, because this problem was of constitutional magnitude, no curative instruction could have remedied the situation and a continuance could not have solved the problem. To be sure, in the absence of an unequivocal waiver by Muhammad of his constitutional rights under *Bruton*, the court was left with no other alternative than to order a mistrial and sever the cases. Therefore, the mistrial was manifestly necessary.

**(2) The government's conduct was not intended to goad the defendants into asking for a mistrial.**

In *Oregon v. Kennedy*, 456 U.S. 667 (1992), the Court held that "[o]nly where the governmental conduct in question is intended to 'goad' the defendant into moving for a mistrial may a defendant raise the bar of double jeopardy to a second trial after having succeeded in aborting the first on his own motion." Defendant Damon Milford argues that the government's conduct is the type of conduct discussed in *Kennedy*.[5] However, at the time of the mistrial, the court made a finding that the prosecution's conduct was not intentional. Additionally, *Kennedy* and its progeny apply to situations in which the Defendant is "goaded" into asking for a mistrial. In this case, as is clear from the discussion of whether "manifest necessity" existed justifying the court's declaration of a mistrial over Defendants objections, Defendants did not consent to a mistrial.

Therefore, because the government did not act with intent to goad Defendants into asking for a mistrial and Defendants did not actually move for a mistrial, Defendant Damon Milford's argument is meritless.

**(3) The alleged inaccuracy of the testimony to the grand jury does not provide a basis for dismissal of the indictment in this case.**

In *United States v. Costello*, 350 U.S. 359, 409 (1956), the Court explained the general rule that "[a]n indictment returned by a legally constituted and unbiased grand jury . . . if valid

---

[5] *Kennedy* is clear that actual intent is required:

> . . . we do hold that the circumstances under which such a defendant may invoke the bar of double jeopardy in a second effort to try him are limited to those cases in which the conduct giving rise to the successful motion for a mistrial was intended to provoke the defendant into moving for a mistrial.

> Since the Oregon trial court found, and the Oregon Court of Appeals accepted, that the prosecutorial conduct culminating in the termination of the first trial in this case was not so intended by the prosecutor, that is the end of the matter for purposes of the Double Jeopardy Clause of the Fifth Amendment to the United States Constitution.

*Id.* at 679.

on its face, is enough to call for trial of the charge on the merits. The Fifth Amendment requires nothing more."

In order to dismiss an indictment based upon the conduct of the government in front of the grand jury, Defendant Milford would need to show that the government knowingly used perjured testimony in order to get the grand jury to return an indictment against him and that absent the perjury, he would not have been indicted. *See United States v. Thomas*, 19 F.3d 1431, *2 (4th Cir. 1994). The Fourth Circuit explained this standard by stating:

> if [the defendant] could show that the government suborned perjury in order to obtain the indictment, then he might be able to attack the indictment on the ground of prosecutorial misconduct. Even then, though, he would have to show that the misconduct "substantially influenced the grand jury's decision to indict." *Bank of Nova Scotia v. United States*, 487 U.S. 250, 256 (1988). [The Defendant] has not even shown prosecutorial misconduct, let alone that the grand jury would probably not have indicted him if it had known [the substance of the perjury].

*Id.* A defendant must show more than just omission of evidence during grand jury testimony to justify dismissal. *See e.g United States v. Casas*, 425 F.3d 23, 38 (1st Cir. 2005) (declining to dismiss the indictment absent evidence that "the prosecutor knowingly presented false testimony"). Additionally, a failure to present exculpatory evidence to the grand jury is insufficient to warrant dismissal. *See United States v. Neely*, 966 F.2d 1445 (4th Cir. 1992), *cert. denied* 507 U.S. 912 (1993) (holding that prosecutorial misconduct in failing to present exculpatory evidence is an inadequate ground to dismiss a validly returned indictment based upon the decision in *United States v. Williams*, 504 U.S. 36 (1992), "which held that a district court may not dismiss an otherwise valid indictment because the government failed to disclose to the grand jury substantial exculpatory evidence in its possession").

Defendant Damon Milford argues that the indictment against him should be dismissed, because the second interview with Damon Milford (the subject of the notes produced after trial

14

had begun) was never discussed during the agents' grand jury testimony. Therefore, according to Defendant Damon Milford, the indictment should be dismissed because it was based on partially perjured testimony, the government knew the testimony was perjured, and the substance was material.

In support of this argument, Defendant Damon Milford cites *United States v. Basurto*, 497 F.2d 781, 786 (9th Cir. 1974) (holding "that the Due Process Clause of the Fifth Amendment is violated when a defendant has to stand trial on an indictment which the government knows is based partially on perjured testimony, when the perjured testimony is material, and when jeopardy has not attached") and *United States v. Lawson*, 502 F. Supp 158, 163 (D. Md. 1980) (where "the government declined to present evidence . . . rebutting the inference that the Assistant United States Attorney's examination of [the witness before the grand jury] constituted a deliberate effort to place false and misleading evidence before the grand jury. Thus, in the absence of a sufficient government explanation, the court finds that the prosecutor's questions . . . were deliberately misleading and calculated to create a false impression on the grand jury"). In both *Basurto* and *Lawson*, the indictments were dismissed, based upon the conduct of the prosecutor. In *Basurto*, the prosecutor failed to return to the grand jury after learning that the witness's material testimony was perjured, and in *Lawson* the court dismissed the indictment because the prosecution was unwilling to rebut the allegation that it deliberately mislead the grand jury. *See Basurto* 497 F2d at 784, n. 1 ("The issue here is not one relating to the sufficiency of evidence before a grand jury to sustain an indictment, but rather, the duty of a prosecutor when he becomes aware that perjury as to a material matter has been committed"); *Lawson*, 502 F. Supp at 163.

The omitted statement does not constitute material evidence sufficient to warrant dismissal based on the grand jury proceedings. The statement is not exculpatory as to Defendant Damon Milford. In fact, it is slightly inclupatory, as it reinforces Defendant Damon Milford's presence at the warehouse.

Defendant Milford is unable to show that government suborned perjury in order to obtain the indictment, and that had the grand jury been presented with that evidence it would probably not have indicted Defendant Milford. Therefore, his argument that the indictment should be dismissed based on alleged inaccuracy of the testimony at the grand jury does not provide a basis for dismissal of the indictment in this case.

## CONCLUSION

For the reasons discussed above, Defendant's motions to dismiss are **DENIED.**

**AND IT IS SO ORDERED.**

_____
PATRICK MICHAEL DUFFY
United States District Judge

**July 18, 2011**
**Charleston, SC**